JASON WAX (WSBA #41944)
RICHARD B. KEETON (WSBA #51537)
BUSH KORNFELD LLP
601 UNION STREET, SUITE 5000
SEATTLE, WA 98101
Tel: (206) 292-2110
Emails: jwax@bskd.com, rkeeton@bskd.com

HONORABLE FREDERICK P. CORBIT

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re<br><br>KATE QUINN ORGANICS, INC.,<br><br>                Debtor. | Chapter 11<br><br>Case No. 25-00445-FPC11<br><br>**DISCLOSURE STATEMENT FOR PLAN OF REORGANIZATION** |

IMPORTANT: THIS DISCLOSURE STATEMENT CONTAINS INFORMATION RELATED TO THE PROPOSED PLAN OF REORGANIZATION WITH RESPECT TO KATE QUINN ORGANICS, INC. (THE "DEBTOR" OR "KQO"):

      PLEASE READ THIS DOCUMENT WITH CARE. THIS DOCUMENT SUMMARIZES THE TERMS OF THE DEBTOR'S PROPOSED PLAN OF REORGANIZATION. THE DEBTOR MAY CONTINUE TO NEGOTIATE PAYMENT TERMS WITH ITS CREDITORS, AND THE SPECIFIC TREATMENT OF CLAIMS MAY CHANGE AS A RESULT, BUT THE DEBTOR BELIEVES THAT THE PAYMENT TERMS WHICH THE DEBTOR WILL ASK THE COURT TO APPROVE WILL NOT BE LESS FAVORABLE THAN THOSE DESCRIBED HEREIN.

      TO ALL PARTIES IN INTEREST:

      On March 14, 2025 (the "Petition Date"), the Debtor filed the above-captioned bankruptcy case (the "Bankruptcy Case"). The Bankruptcy Case is pending before the above-captioned court (the "Bankruptcy Court").

      This Disclosure Statement is submitted by the Debtor and contains information with respect to Debtor's proposed Plan of Reorganization (the "Plan"). Pursuant to

DISCLOSURE STATEMENT – Page 1

Bush Kornfeld llp
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2870 ig08m501ds

25-00445-FPC11    Doc 93    Filed 07/12/25    Entered 07/12/25 23:17:58    Pg 1 of 20

§ 1125 of the Bankruptcy Code, this Disclosure Statement is being distributed to you along with a copy of the proposed Plan to allow you to make an informed decision in exercising your right to accept or reject the proposed Plan. This Disclosure Statement has been approved by order of the Court pursuant to § 1125 of the Bankruptcy Code as containing information of a kind, and in sufficient detail, as far as is reasonably practicable under the circumstances, that would enable a hypothetical reasonable investor to make an informed judgment about the Plan. In the event of inconsistencies between the Plan and the Disclosure Statement, however, the terms of the Plan shall control. The Court's approval of this Disclosure Statement does not constitute an endorsement of the proposed Plan by the Court.

THE ONLY REPRESENTATIONS THAT ARE AUTHORIZED OR THAT MAY BE MADE CONCERNING THE DEBTOR, THE VALUE OF ASSETS, OR THE PLAN ARE CONTAINED IN THIS DISCLOSURE STATEMENT. ANY FINANCIAL INFORMATION CONTAINED HEREIN OR INCORPORATED BY REFERENCE HAS BEEN PREPARED BY THE DEBTOR'S MANAGEMENT AND PROFESSIONAL ADVISORS AND IS EFFECTIVE AS OF THE DATE HEREOF UNLESS OTHERWISE SPECIFIED. THE READER SHOULD NOT INFER OR ASSUME THAT THERE HAVE BEEN NO CHANGES IN THE FACTS SET FORTH HEREIN SINCE THE DATE HEREOF.

FINANCIAL INFORMATION, WHILE PRESENTED WITH NUMERICAL SPECIFICITY, IS NECESSARILY BASED UPON A VARIETY OF ESTIMATES AND ASSUMPTIONS THAT, ALTHOUGH CONSIDERED REASONABLE AND PRUDENT BY MANAGEMENT, MAY NOT BE REALIZED AND WILL REMAIN SUBJECT TO INHERENT UNCERTAINTIES. THE FINANCIAL INFORMATION HAS NOT BEEN SUBJECTED TO AN AUDIT AND FOR THAT REASON THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS WITHOUT INACCURACY. HOWEVER, GREAT EFFORT HAS BEEN MADE TO ENSURE THAT ALL SUCH INFORMATION IS FAIRLY REPRESENTED.

The Plan provides for payments to all Creditors from income generated from the Debtor's operations and from a contribution to the Reorganized Debtor by its Equity Holder, which, in the Debtor's opinion, provides greater recovery than which is likely under a liquidation of the company. The Debtor urges you to accept the proposed Plan and to promptly return your completed Ballot to enable your vote to be counted.

**ARTICLE I.**
**DEFINITIONS**

Terms used in this Disclosure Statement not specifically defined herein or in the Bankruptcy Code shall be defined as set forth in the Plan that accompanies this Disclosure Statement. In particular, certain capitalized terms shall have the meanings ascribed to such terms in Article II of the Plan.

Bush Kornfeld LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2870 ig08m501ds

# ARTICLE II.
# BACKGROUND INFORMATION

A.  **Historical Background and Events Leading to Bankruptcy Filing**

1.  <u>The Debtor's Operational and Financial History</u>. Kate Quinn Organics, Inc. is a direct-to-consumer ("<u>DTC</u>") e-commerce retailer of clothing for babies and kids, with matching clothes for moms. KQO designs and manufactures its clothing in India with collectible custom prints and styles, using some sustainable and organic fabrics. It has a strong online following on social media channels and generally does fresh product launches weekly.

KQO was founded by Katherine Quinn in 2008 and was an omni-channel brand selling product through wholesale, retail, international distribution, and franchise channels until approximately 2018 when Ms. Quinn decided to transition to a DTC model based on connection with KQO's customers. KQO grew rapidly during the time period of 2018 through 2021, at which point it engaged investment bank Cascadia Capital to find a buyer for the business. Unfortunately, when KQO went to market in the spring of 2022, it also experienced major operational difficulties related to the implementation of a faulty new warehouse management system that severely damaged the company's value and revenue.

During this period, Ms. Quinn's then-business partner began taking out numerous short-term loans to finance operations until the company was acquired and that debt could be paid in full. That plan fell through, however, when the private equity firm that had signed a letter of intent to acquire KQO informed Ms. Quinn at the end of 2022 that it would not be able to complete its acquisition because it had decided to deploy its capital elsewhere. That left KQO with too much short-term debt, an operational mess, and unsustainable expenses.

KQO ended 2022 with an $8 million loss and about $11 million dollars in short-term debt. Despite that, KQO managed a small profit in 2023 by working to reduce costs of goods sold, labor costs, and by implementing fair price increases on key products, among other measures. But given the company's crushing debt load from its failed acquisition in 2022, KQO had no choice but to continue operating using expensive short-term debt.

2.  <u>Events Leading to Chapter 11 Filing</u>.  In November 2024, lender Kickfurther ceased its lending relationship with KQO due to asserted undercapitalization following the company's significant inventory acquisition to prepare for the busy upcoming holiday season.  KQO's ability to acquire new inventory was severely impacted without the continued funding from Kickfurther or any other lender.  As a result, the company's revenues rapidly decreased to the point that revenues could not support its debt service.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

## B. Significant Postpetition Events

1. <u>First Day Motions</u>. On March 19, 2025, the Court entered orders (a) approving the Debtor's proposed adequate assurance to utility providers pursuant to Bankruptcy Code § 366 and (b) authorizing the Debtor to pay prepetition wages, benefits and related expenses, authorizing the Debtor's continued use of its prepetition bank accounts and cash management system [ECF Nos. 31 and 32]. On March 24, 2025, the Court entered an interim order authorizing continued use of the Debtor's prepetition cash management system and permitting the Debtor to continue its prepetition customer loyalty programs [ECF No. 38]. The Court entered a final cash management order on April 9, 2025 [ECF No. 59].

2. <u>Cash Collateral</u>. Also on March 19, 2025, the Court entered an order authorizing the Debtor's use of prepetition cash collateral and the proceeds thereof and approving proposed adequate protection on an interim basis [ECF No. 30]. The Court entered a final cash collateral order on April 9, 2025 [ECF No. 58].

3. <u>Claims Bar Date</u>. The deadline for the filing of claims was set as May 23, 2025 [ECF No. 14].

4. <u>No Unsecured Creditors Committee</u>. On April 17, 2025, the United States Trustee filed a notice stating that, due to lack of interest, there would be no Unsecured Creditors Committee pursuant to Bankruptcy Code § 1102 [ECF No. 69].

5. <u>Employment of Professionals</u>. On April 16, 2025, the Court approved the Debtor's employment of Bush Kornfeld LLP as its bankruptcy counsel [ECF No. 66]. Also on April 16, 2025, the Court approved the employment of TurningPointe, LLC d/b/a Turning Point Strategic Advisors as financial advisor to the Debtor [ECF No. 67].

6. <u>Postpetition Business Operations</u>. Since its inception in 2008, KQO has historically operated its own warehouse and fulfillment operations. This model required a significant investment in both physical infrastructure and staffing, including lease commitments for large warehouse spaces and a dedicated fulfillment team.

In early 2025, as part of a broader strategic effort to reduce operating expenses and reallocate internal resources toward product development and growth initiatives, KQO began exploring third-party logistics ("<u>3PL</u>") options. The goal was to outsource fulfillment in a way that would maintain or improve service levels while significantly lowering the Debtor's fixed and variable costs. Beginning in March 2025, KQO initiated conversations with five to six different 3PL providers. One of those was LVK, a fulfillment provider owned by Shiphero, a warehouse management software ("<u>WMS</u>") company. Shiphero acquired and now operates several warehouses both within and outside the United States. These acquisitions were part of Shiphero's effort to gain firsthand insights into the operational challenges faced by companies using their software, thereby enabling improvements in their WMS platform. This made LVK an

Bush Kornfeld llp
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

attractive option since it is constantly looking for ways to improve its services for small businesses like the Debtor.

KQO's first meeting with LVK took place on March 14, 2025. After a series of follow-up conversations, data analysis, and cost modeling, the Debtor determined that transitioning to LVK would lead to substantial savings and operational benefits. To further evaluate the fit, the Debtor's management traveled to Salt Lake City in early April 2025 to meet with LVK's local team as well as their Chief Operating Officer. That visit solidified the Debtor's decision to proceed.

Following internal planning and coordination, the Debtor began the physical transition in early May 2025 by packing and preparing all inventory at its Washington-based warehouse for transport. Two freight trucks received and transported the inventory to the LVK facility in Utah. This move allowed the Debtor to fully exit its existing warehouse lease, which had a monthly cost of approximately $40,000. The Debtor subsequently secured a smaller operational space with a lease costing less than $8,000 per month, resulting in significant cost savings. In addition to the rent reduction, the Debtor was able to downsize its fulfillment staff and eliminate its internal WMS system, further reducing overhead.

This transition has positioned KQO to focus more fully on product development, sourcing, and long-term strategic planning. Outsourcing fulfillment has not only reduced the Debtor's monthly fixed costs but also simplified day-to-day operations, improving overall business agility during the restructuring process.

## ARTICLE III.
## FINANCIAL INFORMATION

**A.    Debtor's Assets**

The Debtor filed its schedules of assets and liabilities (the "Schedules") on the Petition Date and its Statement of Financial Affairs on March 28, 2025. The Debtor's Schedules reflect the following assets held by the Debtor:

1.    Non-Real Property-Related Assets.

| Asset | Scheduled Value |
|---|---|
| Bank Accounts & Payment Gateways | $279,614.92 |
| Factory Deposits | $167,300.00 |
| Professional Retainers | $43,593.15 |
| Inventory | $93,282.00 |
| Office Furniture and Fixtures | $5,000.00 |
| Computers and Related Equipment | $5,000.00 |
| **TOTAL:** | **$593,790.07** |

Bush Kornfeld LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

The wholesale value of Debtor's inventory as of June 30, 2025 is approximately $111,760.

2. Real Property-Related Assets. The Debtor is the lessee of commercial business premises located at 17624 15th Avenue SE, Suites A-107 and A-110, in Bothell, Washington. The value of the Debtor's interest in the leasehold has not been determined.

**B. Debtor's Liabilities**

1. Secured Claim of the U.S. Small Business Administration. The Debtor is obligated to the SBA based on those certain SBA Loan Documents referenced in the SBA Proof of Claim [Claim No. 17] in the amount of $144,089.49.

2. Secured Claim of BRE Jupiter B East WA Owner, LLC. The Debtor's former landlord, BRE Jupiter B East WA Owner, LLC, is currently holding the remainder of the Debtor's security deposit in the amount of $38,327.38, which secures that portion of its Claim filed in this Bankruptcy Case [Claim No. 47].

3. Asserted Secured Claims of Merchant Cash Advance Lenders. Various entities that extended financing or purchased future receivables from the Debtor, as the case may be, commonly referred to as merchant cash advance ("MCA") lenders, assert Claims against the Debtor as follows. The Debtor disputes the validity and extent of security interests of these MCA Claims and asserts that they may be contingent and/or unliquidated, as indicated on the Schedules.

| Claimant | Claim Amount |
|---|---|
| CFT Clear Finance Technology Corp. | $ 3,054,392.73 |
| LG Funding LLC | $ 133,822.50 |
| Ouiby Inc. d/b/a Kickfurther | $ 1,194,216.65 |
| Shopify Capital Inc. | $ 241,778.22 |
| Capybara Capital, LLC | $ 414,000.00 |
| Essentia Funding | $ 417,436.88 |
| Fox Funding Group LLC | $ 87,000.00 |
| Pinnacle Business Funding LLC | $ 113,818.49 |
| **TOTAL:** | **$ 5,656,465.47** |

4. Priority Claims. Priority Claims totaling $383,565.86 were filed by various taxing agencies, as follows. The Debtor reserves the right, upon notice, to dispute any of the following Claims:

DISCLOSURE STATEMENT – Page 6

Bush Kornfeld LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2870 ig08m501ds

25-00445-FPC11    Doc 93    Filed 07/12/25    Entered 07/12/25 23:17:58    Pg 6 of 20

| Claimant | Priority Claim Amount |
|---|---|
| Arizona Department of Revenue | $ 3,347.10 |
| Arkansas Department of Finance | $ 2,790.74 |
| California Department of Tax and Fee Administration | $ 12,490.88 |
| Colorado Department of Revenue | $ 6,499.00 |
| Commonwealth of Virginia Department of Taxation | $ 4,623.70 |
| Connecticut Department of Revenue | $ 1,398.39 |
| Connecticut Department of Revenue | $ 530.00 |
| Florida Department of Revenue | $ 955.63 |
| Idaho State Tax Commission | $ 994.69 |
| Illinois Department of Revenue | $ 40,654.92 |
| Internal Revenue Service | $ 52,261.95 |
| Iowa Department of Revenue | $ 556.73 |
| Kansas Department of Revenue | $ 536.30 |
| Louisiana Department of Revenue | $ 1,227.72 |
| Louisiana Department of Revenue | $ 1,168.56 |
| Maine Department of Revenue | $ 1,184.01 |
| Maryland Department of Revenue | $ 888.57 |
| Massachusetts Department of Revenue | $ 377.40 |
| Missouri Department of Revenue | $ 7,227.02 |
| Nebraska Department of Revenue | $ 2,601.53 |
| New Mexico Department of Revenue | $ 377.25 |
| North Carolina Department of Revenue | $ 6,536.58 |
| North Dakota Department of Revenue | $ 663.59 |
| Ohio Department of Taxation | $ 5,766.61 |
| Rhode Island Department of Revenue | $ 468.99 |
| South Dakota Department of Revenue | $ 347.50 |
| State of Minnesota, Department of Revenue | $ 1,468.23 |
| State of Nevada Department of Taxation | $ 1,262.12 |
| State of Wyoming | $ 475.02 |
| Tennessee Department of Revenue | $ 7,083.42 |
| Texas Comptroller of Public Accounts | $ 14,300.24 |
| Texas Comptroller of Public Accounts | $ 13,387.05 |

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

| Claimant | Priority Claim Amount |
|---|---|
| Utah State Tax Commission | $ 1,968.83 |
| Vermont Department of Revenue | $ 22.70 |
| Virginia Department of Revenue | $ 3,935.89 |
| WA Department of Revenue | $ 20,041.87 |
| WA State Dep't of Labor and Industries | $ 154,818.16 |
| West Virginia State Tax Department | $ 7,171.15 |
| Wisconsin Department of Revenue | $ 1,155.82 |
| **TOTAL:** | **$ 383,565.86** |

5. <u>Non-Priority General Unsecured Claims</u>. The Debtor's Schedules and the Claims Register reflect the following claimants asserting the following Claims. The Debtor reserves the right, upon notice, to dispute any of the following Claims:

| Claimant | Non-Priority Claim Amount |
|---|---|
| American Express National Bank | $ 4,391.76 |
| American Express National Bank, AENB | $ 156,121.49 |
| Anderson Transportation | $ 700.00 |
| Arizona Department of Revenue | $ 20.99 |
| Arkansas Department of Finance | $ 271.90 |
| Auctane LLC dba ShipStation | $ 375.69 |
| Avalara, Inc. | $ 11,793.96 |
| Ben Crudo Consulting Inc. dba DIFF | $ 17,537.50 |
| Black Crow AI, Inc. | $ 23,205.00 |
| Block, Inc. dba Square | $ 2,430.61 |
| C.H. Robinson Worldwide, Inc. | $ 230,830.87 |
| Clear Water Carpet Care, LLC | $ 3,920.00 |
| Colorado Department of Revenue | $ 1,321.80 |
| Comcast Business | $ 3,971.18 |
| Commonwealth of Virginia Department of Taxation | $ 321.98 |
| Connecticut Department of Revenue | $ 225.05 |
| Convergence Northwest, LLC | $ 20,613.66 |
| DHL eCommerce | $ 151,778.75 |

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2870 ig08m501ds

25-00445-FPC11    Doc 93    Filed 07/12/25    Entered 07/12/25 23:17:58    Pg 8 of 20

| Claimant | Non-Priority Claim Amount |
|---|---|
| FedEx Corporate Services Inc. | $ 1,576,666.32 |
| First Choice Health | $ 112.75 |
| Frederick & Associates P.S. | $ 74,442.50 |
| Google Play | $ 8.80 |
| Hillis Clark Martin & Peterson | $ 18,490.50 |
| Icon Owner Pool I West, LLC | $ 287,884.92 |
| Internal Revenue Service | $ 8,483.22 |
| JASCI LLC | $ 19,818.16 |
| Klaviyo Inc. | $ 4,613.38 |
| Law Office of Kenneth H. Dramer, P.C. | $ 102,550.92 |
| Louisiana Department of Revenue | $ 46.40 |
| Lowe Graham Jones PLLC | $ 133.00 |
| Martha Lake Business Park, LLC | $ 39,811.38 |
| Massachusetts Department of Revenue | $ 33.01 |
| Meta Platforms, Inc. | $ 403,958.91 |
| Missouri Department of Revenue | $ 372.25 |
| Missouri Department of Revenue | $ 601.04 |
| Modifi B.V. Compartment SVB1 | $ 258,076.51 |
| North Beam, Inc. | $ 16,183.10 |
| North Carolina Department of Revenue | $ 257.89 |
| Northwest Security & Sound | $ 583.44 |
| Oat Financial, Inc. | $ 417,552.00 |
| Ohio Department of Taxation | $ 3,628.92 |
| Performance Systems Integration | $ 415.49 |
| Postscript | $ 3,857.37 |
| Puget Sound Energy | $ 8,656.27 |
| Quench USA, Inc. | $ 232.61 |
| Redo Tech, Inc. | $ 33,670.00 |
| Regence BlueShield | $ 19,023.90 |
| Snohomish County PUD No. 1 | $ 2,499.95 |
| Sound Benefit Administration, Inc. | $ 34.50 |
| Stamped.io | $ 1,199.00 |
| State of Minnesota, Department of Revenue | $ 146.05 |

Bush Kornfeld LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2870 ig08m501ds

| Claimant | Non-Priority Claim Amount |
|---|---|
| State of Nevada Department of Taxation | $ 108.65 |
| Tennessee Department of Revenue | $ 443.85 |
| Texas Comptroller of Public Accounts | $ 1,543.84 |
| TikTok Inc. | $ 3,665.32 |
| Unique Quiambao | $ 207,809.00 |
| United Parcel Service, Inc. | $ 14,709.07 |
| Utah State Tax Commission | $ 28.71 |
| WA Department of Revenue | $ 2,231.32 |
| WA ST Dept of Labor and Industries | $ 2,541.68 |
| West Virginia State Tax Department | $ 1,634.11 |
| **TOTAL:** | **$ 4,168,592.20** |

6. <u>Financial Projections, Assumptions and Analysis</u>. Attached to this Disclosure Statement are the following financial projections, assumptions and analysis:

Exhibit A – Debtor's Projections for 2025 through 2030
Exhibit B – Assumptions Underlying the Projections
Exhibit C – Liquidation Analysis

# ARTICLE IV.
# SUMMARY OF PROPOSED PLAN OF REORGANIZATION

**A.  Explanation of Impaired and Unimpaired Claims**

The term "Impaired" as used herein refers to those Creditors to whom this Disclosure Statement (and the related Ballots and other materials delivered together herewith) are being furnished and who are entitled to accept or reject the Plan. All Classes are impaired under the Plan, and the Holders of Claims in each Class are entitled to vote to accept or reject the Plan.

The term "Unimpaired" refers to those Creditors or Equity Holders whose Claims or Interests remain unaltered by the reorganization effectuated by the Plan. Because of this favorable treatment, these creditors are conclusively deemed to have accepted the Plan. Accordingly, under Section 1126(f) of the Bankruptcy Code, it is not necessary to solicit acceptances from the Holders of Claims or Interests in such Classes. No Classes are Unimpaired under the Plan and, thus, no Class is conclusively deemed to have accepted the Plan with voting.

Bush Kornfeld llp
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2870 ig08m501ds

25-00445-FPC11    Doc 93    Filed 07/12/25    Entered 07/12/25 23:17:58    Pg 10 of 20

B. **Classification of Claims and Interests**

   1. <u>Unclassified Claims</u>.

   The Bankruptcy Code automatically entitles certain types of Claims to specific treatment. Such Claims are not impaired and are not entitled to vote on the Plan. However, claimants holding such Claims are entitled to object to the Plan, so long as the Plan's treatment of such Claims is inconsistent with the requirements of the Bankruptcy Code. Accordingly, the Debtor has not classified Administrative Expense Claims, which are Allowed Claims for costs or expenses of the Bankruptcy Case that are allowed under sections 503(b) and 507(a)(2) of the Bankruptcy Code, which will primarily be comprised of the Allowed Claims of Professional Persons, and amounts owed the U.S. Trustee pursuant to 28 U.S.C. § 1930. Priority Tax Claims, which are unsecured income, employment, and other taxes described by 11 U.S.C. § 507(a)(8), are impaired and treated separately under the Plan. The treatment of these Unclassified Claims is specified in the Plan.

   2. <u>Classified Claims and Equity Interests</u>.

   <u>Class 1</u>: Secured Claim of U.S. Small Business Administration
   <u>Class 2</u>: Secured Claim of BRE Jupiter B East WA Owner, LLC
   <u>Class 3</u>: Claim of CFT Clear Finance Technology Corp.
   <u>Class 4</u>: Claim of LG Funding LLC
   <u>Class 5</u>: Claim of Ouiby Inc. d/b/a Kickfurther
   <u>Class 6</u>: Claim of Shopify Capital Inc.
   <u>Class 7</u>: Claim of Capybara Capital, LLC
   <u>Class 8</u>: Claim of Essentia Funding
   <u>Class 9</u>: Claim of Fox Funding Group LLC
   <u>Class 10</u>: Claim of Pinnacle Business Funding LLC
   <u>Class 11</u>: General Unsecured Claims
   <u>Class 12</u>: Interests of Equity Holders

C. **Treatment of Classified Claims and Equity Interests**

   As detailed in the Plan, the Secured Claims in Classes 1 and 2 and Priority Tax Claims shall be paid in full, with interest accruing at the rate specified in the Plan, if any, from income generated from the Debtor's business operations.

   Claims in Classes 3–10 shall not receive any payment under the Plan on account of the respective Holders of Class 3–10 Claims; rather, the Allowed Claims of the respective Creditors holding Claims in Classes 3–10 will be included in Class 11 and treated as an Unsecured Claim. The Reorganized Debtor shall pay the Holders of Class 11 Claims, Pro Rata, ninety thousand dollars ($90,000.00) per month for sixty (60)

DISCLOSURE STATEMENT – Page 11

Bush Kornfeld LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2870 ig08m501ds

25-00445-FPC11    Doc 93    Filed 07/12/25    Entered 07/12/25 23:17:58    Pg 11 of 20

months. The first monthly payment shall be due on the fifteenth (15th) day of the first full calendar month that begins at least fourteen days after the Effective Date of the Plan. Each subsequent payment shall be due on the fifteenth (15th) day of each subsequent month. There shall be a seven-day grace period for all payments due on the Class 11 Claims. In addition to these monthly distributions, following the full payment of the SBA Claim and Priority Tax Claims, respectively, the monthly amount payable on the Class 11 Claims shall be increased by the amount that was previously payable on the SBA Claim and Priority Tax Claims, respectively. The forgoing payments to Holders of Class 11 Claims shall be in full satisfaction, settlement, discharge and release of, and in exchange for, each Class 11 Claim, and no further amounts shall be due or owing from the Reorganized Debtor to any Holder of a Class 11 Claim on account of its respective Claim against the Debtor. No interest shall accrue on any Class 11 Claim.

The Equity Holder shall retain her Equity Interests following Confirmation and will continue to own, manage and operate the Reorganized Debtor and its property.

YOU ARE ENCOURAGED TO REVIEW THE TREATMENT OF YOUR CLAIM UNDER THE PLAN WITH CARE.

## ARTICLE V.
## MEANS FOR EXECUTION OF THE PLAN

**A.     Sources of Funds for Distribution**

The Plan provides for payments to all Creditors from income generated from the Debtor's operations and from a contribution to the Reorganized Debtor by its Equity Holder.

**B.     Continued Corporate Existence and Vesting of Assets in the Debtor**

On the Effective Date, the Debtor shall continue to exist in accordance with the laws in the jurisdiction in which it was formed and pursuant to its Articles of Incorporation and Bylaws in effect prior to the Effective Date, except to the extent such documents are amended under the Plan. Except as otherwise provided in the Plan, on and after the Effective Date, each item of property of the Debtor, including all Claims, rights and Causes of Action and any property acquired by the Debtor shall vest in the Reorganized Debtor free and clear of all Claims, Liens, charges, other encumbrances and interests, except for Liens, charges and other encumbrances which the Debtor is required to grant or continue pursuant to Article IV of the Plan. On and after the Effective Date, the Debtor may operate its business and may use, acquire and dispose of property without supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules other than restrictions expressly imposed by the Plan or the Confirmation Order. The Debtor's

DISCLOSURE STATEMENT – Page 12

Bush Kornfeld LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2870 ig08m501ds

25-00445-FPC11    Doc 93    Filed 07/12/25    Entered 07/12/25 23:17:58    Pg 12 of 20

current owner, Katherine Quinn, will continue to operate and manage the Reorganized Debtor.

## C. Cancellation of Indebtedness

On the Effective Date, except for the purpose of evidencing a right to distribution under the Plan, any notes or other instruments or documents evidencing or creating any indebtedness or obligations of, or interest in, the Debtor, except assumed executory contracts, and/or such notes or other instruments evidencing indebtedness or obligations of the Debtor that are unimpaired, reinstated, or amended and restated under the Plan, shall be cancelled and terminated and of no further force or effect.

## D. Post-Confirmation Professional's Services

Following the Effective Date, Bush Kornfeld LLP shall continue to serve as the Reorganized Debtor's counsel and Turning Point Strategic Advisors shall continue to serve as the Reorganized Debtor's financial advisor. The Reorganized Debtor shall be authorized to employ and compensate Professionals Persons following Confirmation upon such terms as the Reorganized Debtor deems reasonable and appropriate without further notice or order of the Court.

## E. Retention of Claims and Causes of Action

Unless specifically waived in the Plan, all rights, Claims and Causes of Action, whether equitable or legal, of the Debtor against all Persons are reserved for and assigned to the Reorganized Debtor, including without limitation all rights, Claims and Causes of Action of the Debtor arising under §§ 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code, or under applicable non-bankruptcy law, for the recovery of avoidable preferences, fraudulent transfers or other conveyances.

The Debtor is not currently involved in any litigation and does not contemplate engaging in any litigation in the future.

## ARTICLE VI.
## LIQUIDATION ANALYSIS

The Bankruptcy Code requires that a Creditor with a right to vote either accept the Plan, or that such creditor receive under the Plan at least as much as it would receive if the Debtor's assets were liquidated in and the proceeds distributed under a chapter 7 liquidation. This is generally known as the "best interests" test. To apply the test, the Debtor's assets are valued at the dollar amount that would be generated from their distressed liquidation in the context of a chapter 7 case by a trustee appointed by the Bankruptcy Court. As set forth in the Liquidation Analysis attached hereto as **Exhibit C**, the Debtor believes that the Plan satisfies the standard.

DISCLOSURE STATEMENT – Page 13

Bush Kornfeld LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2870 ig08m501ds

25-00445-FPC11   Doc 93   Filed 07/12/25   Entered 07/12/25 23:17:58   Pg 13 of 20

# ARTICLE VII.
# EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Plan constitutes a motion by the Debtor to assume its Premises Lease with Tabit Partners and all other leases and executory contracts in effect as of the Effective Date, except as to such leases and executory contracts identified in Section 6.2 of the Plan, as of the Effective Date pursuant to § 365(a) of the Bankruptcy Code. Any party to a lease or executory contract that asserts a cure amount is owing shall, within the same deadline and in the same manner established for objections to Confirmation, file a Proof of Claim with the Bankruptcy Court for arrearage required to be cured by Bankruptcy Code § 365(b)(1) and any objections to the assumption.

The Plan also constitutes a motion by the Debtor to reject its Professional Services Agreement, Master Services Agreement, and all other ancillary executory contracts with JASCI LLC as of the Effective Date, pursuant to 11 U.S.C. § 365. Any Claim arising from the rejection of an executory contract or unexpired lease is a Class 11 Claim to the extent it is an Allowed Claim. Any Person holding a Claim based upon the rejection of an executory contract or unexpired lease must file a Proof of Claim with the Bankruptcy Court within thirty (30) days following the Effective Date.

# ARTICLE VIII.
# TAX CONSEQUENCES

The federal income tax consequences of the implementation of the Plan to a Holder of a Claim will depend, among other things, on (a) whether its Claim constitutes a debt or security for federal income tax purposes, (b) whether the Holder of the Claim receives consideration in more than one tax year, (c) whether the Holder of the Claim is a resident of the United States, (d) whether all of the consideration by the Holder of the Claim is deemed received by that Holder of the Claim as part of an integrated transaction, (e) whether the Holder of the Claim reports income using the accrual or cash method of accounting, and (f) whether the Holder of the Claim has previously taken a bad debt deduction or worthless security deduction with respect to the Claim.

THERE MAY BE OTHER CIRCUMSTANCES RELATED TO A PARTICULAR HOLDER OF A CLAIM THAT COULD CREATE TAX CONSEQUENCES FOR SUCH HOLDER, AND THE DEBTOR SPECIFICALLY DISCLAIMS ANY REPRESENTATION OR WARRANTY THAT THE FOREGOING LIST IS COMPLETE. ALL PARTIES IN INTEREST ARE ENCOURAGED TO READ THIS ENTIRE DISCLOSURE STATEMENT CAREFULLY, INCLUDING THE PLAN AND OTHER EXHIBITS, BEFORE DECIDING TO VOTE EITHER TO ACCEPT OR REJECT THE PLAN. HOLDERS OF CLAIMS AND EQUITY INTERESTS SHOULD, HOWEVER, NOT CONSTRUE THE CONTENTS OF THE DISCLOSURE STATEMENT AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL OR TAX ADVICE AND SHOULD CONSULT WITH THEIR OWN ADVISORS AS TO ALL SUCH MATTERS.

DISCLOSURE STATEMENT – Page 14

Bush Kornfeld LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2870 ig08m501ds

25-00445-FPC11    Doc 93    Filed 07/12/25    Entered 07/12/25 23:17:58    Pg 14 of 20

The Debtor anticipates that the tax consequences of the Plan to the Debtor will have no effect on its ability to consummate the Plan.

TREASURY DEPARTMENT CIRCULAR 230 DISCLAIMER: TO ENSURE COMPLIANCE WITH REQUIREMENTS IMPOSED BY THE INTERNAL REVENUE SERVICE, WE INFORM YOU THAT (A) ANY U.S. FEDERAL TAX INFORMATION CONTAINED IN THIS COMMUNICATION (INCLUDING ANY ATTACHMENTS) IS NOT INTENDED OR WRITTEN TO BE USED OR RELIED UPON, AND CANNOT BE USED OR RELIED UPON, FOR THE PURPOSE OF (1) AVOIDING TAX-RELATED PENALTIES UNDER THE INTERNAL REVENUE CODE OF 1986, AS AMENDED, OR (2) PROMOTING, MARKETING OR RECOMMENDING TO ANOTHER PARTY ANY TRANSACTION OR TAX MATTER(S) ADDRESSED HEREIN, AND (B) THIS DISCUSSION WAS WRITTEN IN CONNECTION WITH THE DEBTOR'S SOLICITING ACCEPTANCE OF THE PLAN THROUGH THIS DISCLOSURE STATEMENT.

## ARTICLE IX.
## RISK FACTORS

Distributions to creditors contemplated under the Plan are contingent upon many assumptions, some or all of which could fail to materialize and preclude the Plan from becoming effective or reduce anticipated distributions. Most important, however, is that the Plan is subject to approval by the various Classes of Creditors entitled to vote under the Bankruptcy Code and to Confirmation of the Plan by the Bankruptcy Court. No assurance can be given that the Plan will be accepted by the requisite number and amount of Creditors or confirmed by the Court. In that event, due to the costs and uncertainties inherent in a modified plan of reorganization or a conversion and liquidation under chapter 7, all Creditors of the Estate face substantial risk that their recovery under such alternative circumstances may be substantially less favorable than their recovery provided for by the Plan.

In addition, the Debtor operates a DTC retail business which generates revenue through the sale of goods, nearly all or all of which are imported from overseas. Given the ongoing uncertainty in the United States and globally regarding tariffs, duties, and related issues, there is a risk that the Debtor's business operations will be negatively impacted, jeopardizing the Debtor's ability to confirm its Plan, or to make payments required pursuant to any confirmed Plan.

Bush Kornfeld LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2870 ig08m501ds

# ARTICLE X.
# CONFIRMATION OF THE PLAN

A. **Voting Procedures**

A Ballot to be used for voting your acceptance or rejection of the Debtor's Plan of Reorganization is being mailed to you together with this Disclosure Statement and Plan. Holders of Claims should read the instructions carefully, complete, date and sign the Ballot, and transmit it in the envelope enclosed. IN ORDER TO BE COUNTED, YOUR BALLOT MUST BE RECEIVED AT THE INDICATED ADDRESS NOT LATER THAN 5:00 P.M. ON _____, 2025. FAILURE TO VOTE OR A VOTE TO REJECT THE PLAN WILL NOT AFFECT THE TREATMENT TO BE ACCORDED A CLAIM OR INTEREST IF THE PLAN NEVERTHELESS IS CONFIRMED.

If more than one-half in number of claimants voting and at least two-thirds in amount of the Allowed Claims of such claimants in each Class of Claims vote to accept the Plan, such Classes will be deemed to have accepted the Plan. If at least two-thirds in amount of the shares voted in a Class of Equity Interests vote to accept the Plan, such Class will be deemed to have accepted the Plan. For purposes of determining whether a Class of Claims or Equity Interests has accepted or rejected the Plan, only the votes of those who have timely returned their Ballots will be considered.

B. **Hearing on Confirmation**

The hearing on Confirmation of the Plan has been set for _____, 2025, before the Honorable Frederick P. Corbit, United States Bankruptcy Judge, in the United States Bankruptcy Court in Spokane, Washington. The Bankruptcy Court shall confirm the Plan at that hearing only if certain requirements, as set forth in § 1129 of the Bankruptcy Code, are satisfied.

C. **Feasibility**

The Debtor must also establish that confirmation of the Plan is not likely to be followed by the Debtor's liquidation, or the need for further financial reorganization. For purposes of determining whether the Plan meets this requirement, the Debtor has prepared the projections of the Reorganized Debtor's future performance and its ability to meet its obligations under the Plan (the "Projections"). The Projections are attached as **Exhibit A** to this Disclosure Statement. The Projections are based on the assumption that the Plan will be confirmed by the Bankruptcy Court and that the Effective Date of the Plan will be no later than November 1, 2025. The Projections are also based on the Reorganized Debtor continuing to operate in roughly the same macroeconomic environment that exists today. Based upon the Projections, the Debtor believes that confirmation of the Plan is not likely to be followed by the liquidation or further reorganization of the Debtor. To the extent necessary, the Debtor will present additional evidence at the hearing on Confirmation in support of such a finding.

Bush Kornfeld LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

## D. Treatment of Dissenting Classes of Creditors

The Bankruptcy Code requires the Bankruptcy Court to find that the Plan does not discriminate unfairly, and is fair and equitable, with respect to each Class of Claims or Equity Interests that is impaired under, and has not accepted, the Plan. Upon such a finding, the Bankruptcy Court may confirm the Plan despite the objections of a dissenting Class. The Debtor has requested that the Court confirm the Plan even if Creditors holding Claims in impaired classes do not accept the Plan.

## E. Effect of Confirmation

Confirmation of the Plan shall operate on the Effective Date as a discharge of the Debtor from all Claims and indebtedness that arose before the Effective Date, except for those Unclassified Claims that the Debtor agrees to pay as a continuing obligation. All such discharged Claims and indebtedness shall be satisfied by the cash payment or other consideration provided under the Plan. Upon Confirmation, all property of the Debtor's estate shall be free and clear of all claims and interests of Creditors, except as otherwise provided in the Plan or the order of the Bankruptcy Court confirming the Plan. The Reorganized Debtor shall be vested with all assets of the Debtor's estate. The provisions of the Plan shall bind the Reorganized Debtor, and all other parties in interest, including any Creditor of the Debtor, whether or not such Creditor is impaired under the Plan and whether or not such Creditor has accepted the Plan.

## F. Consequences of the Failure to Confirm the Plan

In the event the Court declines to confirm the Debtor's Plan, whether due to a failure of Creditor support or otherwise, a liquidation might ultimately result, either through a revised Plan under chapter 11 or conversion of this Bankruptcy Case to a case under chapter 7 of the Bankruptcy Code, in which case Creditors will receive a reduced recovery as the liquidation value of the Debtor's Estate will likely be sufficient to pay only Classes 1 and 2 in full, and potentially a fraction of the Allowed Class 3 Claim, if any, leaving nothing at all for payment to other Creditors.

DATED this 12th day of July, 2025.

KATE QUINN ORGANICS, INC.

By  */s/ Katherine Quinn*
    Katherine Quinn
Its President

DISCLOSURE STATEMENT – Page 17

Bush Kornfeld LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2870 ig08m501ds

25-00445-FPC11    Doc 93    Filed 07/12/25    Entered 07/12/25 23:17:58    Pg 17 of 20

# EXHIBIT A

**Debtor's Projections for 2025 through 2030**

*[To be supplemented]*

# EXHIBIT B

## Assumptions Underlying the Projections

*[To be supplemented]*

# **EXHIBIT C**

**Liquidation Analysis**

*[To be supplemented]*